**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| POWER ENERGY SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>POWER HOME REMODELING GROUP, LLC,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CASE NO. |

**COMPLAINT**

Plaintiff Power Energy Solutions LLC ("Power Energy"), by and through undersigned counsel, brings this Complaint against Defendant Power Home Remodeling Group, LLC ("Power Home"), and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure, to establish that Power Energy has no obligation to arbitrate the claims that Power Home asserts against it in a pending arbitration before FORUM Alternative Dispute Resolution ("FORUM"), captioned *Power Home Remodeling Group, LLC v. Power Energy Solutions, LLC*, No. FA2508002172608 (the "Arbitration"), and that no agreement to arbitrate covers the claims asserted in the Arbitration. Power Energy further seeks a declaration that, to the extent any such claims were arbitrable, Power Home waived any alleged right to arbitrate the claims asserted in the Arbitration. Accordingly, Power Energy seeks an injunction enjoining Power Home from proceeding with the Arbitration.

2. The requested declaratory relief and injunction is warranted for several reasons. First, Power Energy is not required to arbitrate Power Home's claims, as the claims are outside the scope of the arbitration clause contained in the parties' Master Subcontractor Agreement for Solar Installations, dated August 9, 2023 (the "Agreement"), attached hereto as Exhibit A.

3. Second, Power Home waived any alleged right to arbitrate by filing a proceeding ("TTAB Proceeding") with the United States Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB") against Power Energy, based on the same factual allegations raised in the Arbitration, and pursing those claims in the TTAB for two years. *See* Notice of Opposition attached hereto as Exhibit B. The proceeding before the TTAB that Power Home commenced in October 2024 is now nearing final determination on the merits. Further, Power Home filed its Claim in Arbitration only after litigating its claims in the TTAB for ten months, and only after Power Energy refused to consent to an extension of the discovery deadline in the pending TTAB Proceeding. *See* Original Claim in Arbitration, attached hereto as Exhibit C, filed on August 20, 2025. Moreover, the arbitration provisions in the Agreement dispositively render Power Home's Claim in Arbitration as untimely which further supports injunctive relief here.

4. Power Energy would suffer immediate and irreparable harm if Power Home were permitted to misuse the litigation process by asserting untimely arbitration claims, thereby forcing Power Energy to litigate the same issues simultaneously in multiple forums and effectively granting Power Home two bites of the apple.

5. Whether the parties agreed to arbitrate this dispute is a gateway question for this Court to decide. Power Energy did not agree to arbitrate trademark disputes concerning its POWER ENERGY SOLUTIONS trademark ("POWER ENERGY SOLUTIONS Mark") which is currently the subject of the pending TTAB Proceeding.

6. On August 22, 2025, at the same time it filed its Claim in Arbitration, Power Home also sought to suspend the TTAB proceeding in favor of "a pending arbitration claim that has direct bearing on this proceeding." Despite that the TTAB routinely grants such requests, on March 2, 2026, the TTAB categorically refused to suspend the TTAB Proceeding holding that:

> Notwithstanding that the Arbitration may have a bearing on some of the issues before the Board, there is evidence in the record that Applicant would suffer hardship should proceedings be suspended for the Arbitration and that Opposer may have waived its right to arbitration. More particularly, Opposer does not contest Applicant's assertions that discovery, now closed, has been "comprehensive"; that Opposer agreed, in a "pre-motion meet and confer," to produce supplemental discovery responses by August 27, 2025 and failed to do so; and, that the Arbitration "exponentially increase[s] the expenses associated with this Opposition" and was filed "to avoid [Opposer's] discovery obligations" as a form of "gamesmanship." This is the sort of behavior not condoned by the grant of a motion to suspend. See Martin Beverage, 1971 WL 16475, at *2-4. Moreover, should the Board find Opposer defaulted in pursuing its right to arbitration, the Board need not stay its proceeding. FAA Section 3; Morgan, 596 U.S. at 413 (noting that when parties engage in "months, or even years of litigation … the court faces a question: Has the defendant's request to switch to arbitration come too late"); Al-Nahhas, 129 F.4th at 424 ("default" in FAA § 3 "encompasses waiver through litigation conduct, and we have signaled that courts decide if such default has occurred.").
>
> Balancing the foregoing, and in the exercise of the Board's discretion to determine whether to stay a proceeding pending artibration, the Board finds that suspending proceedings for arbitration at this time on this record is not warranted. See First Heritage, 710 F.2d at 1208 (affirming denial of motion to suspend for arbitration where the issues require a more complete record). Rather, a more complete record of Opposer's actions evidencing its exercise of its options and the scope of the agreement to arbitrate is required.
>
> In view of the foregoing, Opposer has failed to establish good cause for suspension of Board proceedings pending disposition of the Arbitration. See Trademark Rule 2.117. As a result, the Board declines to suspend proceedings on the basis of the record before it at this time. Accordingly, Opposer's motion to suspend

> proceedings pending disposition of the Arbitration is denied
> without prejudice."

7. Because the TTAB correctly refused to stay the pending TTAB Proceeding, Power should not be compelled to litigate the viability of its POWER ENERGY SOLUTIONS Mark in two simultaneous forums before an arbitrator who lacks authority over it.

**PARTIES**

8. Plaintiff Power Energy Solutions LLC is a New Jersey limited liability company with its principal place of business located at 72 E Holly Avenue #103, Pitman, New Jersey 08071.

9. Defendant Power Home Remodeling, LLC is a Delaware limited liability company with its principal place of business at 2501 Seaport Drive Suite B110, Chester, Pennsylvania 19013.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The underlying controversy that Power Home has submitted to arbitration arises under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and looking through the parties' dispute over arbitrability to that underlying controversy, this action is predicated on a claim arising under federal law. *See* Vaden v. Discover Bank, 556 U.S. 49 (2009).

11. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because it is a civil action between citizens of different States—Power Energy, a citizen of New Jersey, and Power Home, a citizen of Delaware and/or Pennsylvania—and the amount in controversy exceeds $75,000, exclusive of interest and costs. In the underlying Arbitration, Power Home seeks monetary damages in an amount exceeding $150,000.

12. This Court may exercise personal jurisdiction over Power Home because Power Home's principal place of business is in this judicial district and is therefore at home in this district.

Power Home purposefully conducts its business operations from this district, avails itself of the privileges and protections of the laws of this district, and should reasonably expect that it may face suit in this judicial district.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) because Power Home resides in this district and pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district, including the negotiation and execution of the Agreement, which was made from Power Home's principal place of business in Chester, Pennsylvania.

14. Venue is also proper in this District because, under the Agreement at issue between Power Home and Power Energy, the parties expressly agreed that, to the extent any action relating to the Agreement is brought in federal court, this Court would serve as the exclusive venue for such action.

## FACTUAL BACKGROUND

### *Background on the Parties*

15. Power Energy is a premier provider of solar energy and is a licensed solar contractor. Power Energy provides high-quality, cost-efficient solutions for residential and commercial owners looking to invest in renewable energy.

16. Power Energy offers comprehensive solar energy services, including system design, consultation, installation, and related energy solutions, and has developed substantial goodwill and recognition in connection with its business and brand through the provision of these services.

17. Power Energy is committed to delivering reliable, efficient, and innovative renewable energy solutions and serves customers throughout Pennsylvania, New Jersey, and surrounding markets.

18. Power Home is a home remodeling business based in Chester, Pennsylvania.

19. In August 2023, Power Energy and Power Home entered into the Agreement, which contains the arbitration provision at issue here. *See* Exhibit A. Under the Agreement, Power Energy was to provide installation services for certain solar and home-improvement products to Power Home's customers in New Jersey. *See id*. at p. 1.

20. The named parties to the Agreement are "Power Home Remodeling Group, LLC" and "Power Energy Solutions LLC." *See id*. at p. 1.

21. The Agreement is a subcontracting agreement defining the scope of Power Energy's obligations in providing solar installation services to Power Home's customers. It is not a trademark license or any related type of agreement, and it contains no provision addressing the ownership or licensing of either party's trademarks.[1]

22. Ultimately, Power Home and Power Energy engaged in minimal business pursuant to the Agreement and have not had any business relationship since well before the initiation of the TTAB Proceeding in 2024.

23. The Agreement contains an arbitration provision, compelling arbitration only for disputes, claims, or controversies "arising under or relating to" the Agreement. *See id*. at p. 15-17.

24. The arbitration provision further mandates that any arbitration "MUST BE INITIATED OR OTHERWISE COMMENCED BY THE PARTY ASSERTING OR COMPELLING THE ARBITRATION WITHIN A REASONABLE TIME AFTER THE CLAIM IN QUESTION HAS ARISEN". *See id*. at p. 15 (emphasis in original).

---

[1] The only provision in the Agreement concerning trademarks states that Power Energy shall not use Power Home's "name or mark on any forms, advertising materials, promotional materials, coupons, methods of soliciting business, and other materials." *See* Exhibit A at p. 6. Notably, the term "mark" is not defined, and there has never been an allegation that Power Energy uses or used Power Home's "name" – Power Home Remodeling, LLC.

25. The Agreement also contained certain default provisions, which governed the procedures the parties were required to follow in the event of a default by either Power Home or Power Energy. *See id*. at p. 12-13.

***Pending Trademark Trial and Appeal Board Opposition and Arbitration***

26. Power Energy has continually and exclusively used its POWER ENERGY SOLUTIONS Mark for solar energy installation and related services since at least as early as 2020, well before the Agreement was executed.

27. In connection with such use, on August 11, 2023, Power Energy filed U.S. Trademark Application Serial No. 98127853 for the mark POWER ENERGY SOLUTIONS for "[i]nstallation of solar energy systems and alternative energy products for residential and commercial use, Roofing installation, Siding installation, Window installation, Door installation" in International Class 37 (the "POWER ENERGY SOLUTIONS Application"). The POWER ENERGY SOLUTIONS Application identifies a first use in commerce date of June 22, 2020, and was published on June 25, 2024.

28. On October 21, 2024, ***with full knowledge of the Agreement which contains the arbitration provision at issue here***, Power Home initiated the TTAB Proceeding, Opposition No. 91294646, before the TTAB, opposing the POWER ENERGY SOLUTIONS Application, in part, purportedly because Power Home's use of its POWER ENERGY SOLUTIONS mark was "likely" to cause consumer confusion with Power Home's asserted "POWER" and "P"-formative marks. *See* Exhibit B.

29. Discovery closed in the TTAB Proceeding on August 2, 2025. Shortly thereafter, Power Home requested, and was subsequently denied, an extension of the TTAB Proceeding discovery deadline.

***Power Home's Belated and Improper Arbitration Proceeding***

30. On August 20, 2025, *nearly one year after initiating the TTAB Proceeding, over two weeks after the close of discovery, and only after it was denied an extension of the discovery deadline*, Power Home filed its Claim in Arbitration with FORUM. *See* Exhibit C. Power Home filed a Request to Amend Claim and its Amended Claim on October 23, 2025.

31. In the Arbitration, Power Home alleges that Power Energy breached the Agreement by using the trademark (Claim 1), and committed trademark infringement, unfair competition, false advertising and false designation of origin, by using Power Energy's own trademark (Claim 2). Power Home alleges that such use by Power Energy is likely to cause consumer confusion as to the source of the goods and services associated with Power Energy and its trademark. Crucially, this is the ***identical*** issue and ***identical*** trademark currently being litigated in the TTAB.

32. On the same day that its Claim was filed, Power Home filed a Motion to Suspend (the "Suspension Motion") the TTAB Proceeding pending the outcome of the Arbitration. On September 10, 2025, Power Energy opposed the Suspension Motion and on March 2, 2026, the TTAB issued an Order denying the Suspension Motion. In this March 2, 2026 order, the TTAB held that Power Energy "would suffer hardship should proceedings be suspended for the Arbitration and that [Power Home] may have waived its right to arbitration." Because Power

Home failed to establish good cause for the suspension of the proceedings, the TTAB resumed the proceedings and reset the remaining deadlines.

33. Since that time, the parties have conducted substantial trial activity in the TTAB, and the TTAB Proceeding is nearing completion. The opening testimony periods for both parties have concluded. Following the rebuttal testimony periods, the only remaining steps will be the submission of trial briefs for final decision by the TTAB.

***Power Energy's Request for Involuntary Dismissal of Arbitration***

34. Power Energy never consented to arbitrate this dispute. Immediately following Power Home's filing of the Claim with FORUM, Power Energy sought and obtained from FORUM a ninety-day extension to file its objections to the Claim.

35. On March 18, 2026, Power Energy filed a Request for Involuntary Dismissal of the Arbitration with FORUM, pursuant to FORUM Business-to-Business Disputes Rule 5.5. The Arbitrator held a brief hearing on Power Energy's Request for Involuntary Dismissal on May 28, 2026 and directed supplemental briefing, which Power Energy submitted on June 5, 2026.

36. In this Request for Involuntary Dismissal and associated supplemental briefing, Power Energy presented numerous arguments as to why the Arbitration could not and should not proceed.

37. First, Power Energy argued that the TTAB's forthcoming ultimate ruling will have preclusive effect, and that the Arbitration cannot proceed simultaneously with the TTAB Proceeding, which is nearing completion. Power Energy explained that, when the same marks and usages are at issue, duplicative litigation of likelihood of confusion is unnecessary and disfavored, and that courts consistently decline to adjudicate likelihood of confusion disputes when a TTAB

proceeding is more advanced and could sooner resolve the likelihood of confusion issue. *See B & B Hardware, Inc. v. Hargis Indus., Inc.,* 575 U.S. 138, 154 (2015).

38. Next, Power Energy argued that the purported dispute and claims asserted by Power Home in the Arbitration fall outside the scope of the arbitration provision of the Agreement. The claims at issue in the Arbitration involve use of Power Energy's POWER ENERGY SOLUTIONS Mark, which was in use well prior to the Agreement. The arbitration provision in the Agreement does not encompass disputes over Power Energy's *pre-existing* use of its mark. Such a pre-existing dispute does not and cannot fall within the scope of the arbitration provision. *See Armor All/STP Products Co. v. TSI Products, Inc.,* 337 F. Supp. 3d 156, 174 (D. Conn. 2018). Power Home's preexisting knowledge of such use is reflected on the face of the Agreement, as it expressly references "Power Energy Solutions LLC" as the named subcontractor *in the very first sentence of the Agreement*. *See* Exhibit A. The Agreement evidences that Power Home was aware of Power Energy's use of its POWER ENERGY SOLUTIONS Mark at least as early as November 2023, when it entered into the Agreement.

39. Power Energy additionally explained that nothing in the Agreement purports to govern, transfer, license, or otherwise regulate ownership or use of the POWER ENERGY SOLUTIONS Mark. Rather, the arbitration provision is limited to disputes, claims, or controversies "arising under or relating to" the Agreement, which is a subcontracting arrangement concerning Power Energy's provision of solar installation services to Power Home's customers.

40. There is no interpretation of the Agreement which would require Power Energy to engage in arbitration related to use of its preexisting business name and corresponding POWER ENERGY SOLUTIONS Mark as a potential breach of the Agreement, when Power Home was

clearly aware of such use at the time of contracting and when the Agreement does not govern or police such use of the mark.

41. Power Energy also explained that Power Home's reliance on the arbitration provision in the Agreement further fails because Power Home did not initiate the Arbitration within a "reasonable time after the claim in question has arisen", as required by the arbitration provision of the Agreement. *See* Exhibit A at p. 15. To the contrary, Power Home was fully aware of Power Energy's use of the POWER ENERGY SOLUTIONS Mark at the time of contracting in August 2023. Therefore, the purported claims arose ***two years*** prior to Power Home's Claim being made with FORUM. Such an extensive delay is not "reasonable".

42. Power Home additionally failed to adhere to the Default provisions of the Agreement (*see id.* at p. 12-13). The parties engaged in minimal business pursuant to the Agreement and have not had any business relationship since well before both the initiation of the TTAB Proceeding in 2024 and the institution of the Arbitration. If any default had existed, pursuant to the terms of the Agreement, Power Home would have been obligated to raise it promptly and to pursue a cure when the parties were actually transacting. Instead, Power Home failed to provide any notice of any event of default during the pendency of the parties' business relationship, because there was none, and cannot now be heard to claim otherwise.

43. In its Request for Involuntary Dismissal, Power Energy also explained Power Home further delayed by initiating the Claim ***over ten (10) months after*** it initiated the TTAB Proceeding, and only ***after*** it was denied an extension of discovery in the TTAB Proceeding.

44. Power Home's attempt to arbitrate the dispute is additionally legally baseless because it seeks relief an arbitrator cannot grant. Specifically, in its Amended Claim, Power Home asked the arbitrator for an order directing Power Energy to "withdraw all pending trademark

applications for a mark that is identical to or confusingly similar to [Claimant's] POWER name and Trademarks, including but not limited Application Serial No. 98127853 and any other trademark applications for a mark consisting of or incorporating the formatives "POWER," "POWER ENERGY," and "POWER ENERGY SOLUTIONS." However, an arbitrator does not have the power to determine federal trademark registration. This issue falls squarely within the TTAB's jurisdiction and expertise. *See* Trademark Trial and Appeal Board Manual of Procedure § 102.01 (explaining that the Board is empowered with the right to register trademarks); 15 U.S.C.A. §§ 1067, 1068.

45. Lastly, Power Energy set forth that Power Home's late-stage and unreasonably delayed attempt to arbitrate these claims was but a blatant effort to forestall an inevitable final decision by the TTAB because Power Home likely believes that it will not prevail in that forum. This gamesmanship and forum shopping was explicitly recognized by the TTAB when it denied Power Home's Motion to Suspend.

***Arbitrator's Interim Award***

46. On June 18, 2026, the arbitrator issued a three sentence "Interim Award" on Power Energy's Request for Involuntary Dismissal, stating the following:

> The Arbitrator, having reviewed the parties' briefs & the applicable Forum Rules, issues the following Interim Ruling:
>
> 1. This Arbitrator finds he has jurisdiction, not to the detriment of any other forum where the parties are litigating, to consider the questions thus far presented to him.
>
> 2. Respondent's Request for Involuntary Dismissal under this Arbitration Forum's R 5.5 is denied without prejudice to Respondent renewing its defense after evidentiary hearings are concluded in this Arbitration and the parties fully develop their Records for such relief as they claim; and the TTAB issues its final decision(s) on the parties' litigation before that body which either argues collaterally estops any issue presented to this Arbitrator.

47. The Interim Award deferred Power Energy's arbitrability defense, permitting Power Energy to renew it only "after evidentiary hearings are concluded in this Arbitration and the parties fully develop their Records," and after "the TTAB issues its final decision(s)" that may collaterally estop issues before the arbitrator. The arbitrator thus declined to decide, as a threshold matter, the precise scope of the arbitration provision of the parties' Agreement, and instead required the Arbitration to proceed to evidentiary hearings on the merits.

48. Whether the parties agreed to arbitrate the specific claims at issue is a gateway question that must be resolved before any party can be compelled to arbitrate the merits. Despite the numerous arguments set forth in Power Home's Request for Involuntary Dismissal and supplemental briefing, the arbitrator nevertheless failed to explicitly decide, as a threshold matter, whether Power Home's claims fall within the scope of the arbitration provision.

49. By deferring Power Energy's arguments until after the merits are tried, the Interim Award compels Power Energy to arbitrate a dispute it never agreed to submit to arbitration and forces it to litigate the identical likelihood of confusion issue, involving the identical mark, in two forums at once—defending the Arbitration while simultaneously defending the nearly completed TTAB Proceeding. That result imposes on Power Energy the burden and expense of duplicative, parallel proceedings and exposes both parties to the risk of inconsistent adjudications of the same dispositive issue.

50. In sum, the delayed timing and posture of Power Home's attempt to arbitrate this dispute reflect an attempt to harass and needlessly increase Power Energy's costs, and this Court's intervention is therefore required to prevent duplicative and wasteful litigation, and protect Power Energy from the prejudice resulting from Power Home's improper attempt to arbitrate claims which Power Energy never agreed to arbitrate.

51. If the Arbitration were to proceed, Power Energy will incur the substantial time and expense in defending itself in both the TTAB Proceeding and Arbitration simultaneously, or risk an adverse outcome in the arbitration proceeding. Being compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm.

**COUNT I**
**DECLARATORY JUDGMENT THAT THE DISPUTE IS NOT SUBJECT TO ARBITRATION**

52. Power Energy repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth at length herein.

53. An actual, justiciable controversy exists between the parties concerning whether Power Home's claims are subject to arbitration under the Agreement. Power Home has commenced and is actively prosecuting the Arbitration, and Power Energy contends that it has no obligation to arbitrate those claims.

54. A judicial declaration is therefore necessary and appropriate to clarify that Power Energy did not consent to submitting the claims asserted by Power Home to arbitration.

55. Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute it has not agreed to submit. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

56. Whether the parties agreed to arbitrate a particular dispute is a question of arbitrability for judicial determination unless the parties clearly and unmistakably provided otherwise. *Id*. at 649; *Opalinski v. Robert Half Int'l Inc.,* 761 F.3d 326, 335 (3d Cir. 2014).

57. The Agreement's arbitration provision states that "ANY AND ALL DISPUTES, CLAIMS, OR CONTROVERSIES . . . INCLUDING . . . (IV) THE VALIDITY OF THIS AGREEMENT OR THE VALIDITY OR ENFORCEABILITY OF THIS ARBITRATION

PROVISION, MUST BE ADJUDICATED BY FINAL AND BINDING ARBITRATION" *See* Exhibit A at p. 15 (emphasis in original). At most, this language commits to arbitration of the validity and enforceability of the arbitration provision itself; it nowhere states who decides whether a specific dispute falls within the scope of the provision.

58. Because the Agreement contains no clear and unmistakable delegation of that threshold question, this Court can determine whether Power Home's claims are arbitrable.

59. A party that disputes its obligation to arbitrate is entitled to seek a judicial determination of that issue, and the Declaratory Judgment Act authorizes this Court to declare the parties' respective rights and obligations under the Agreement. 28 U.S.C. § 2201(a).

60. Power Energy is entitled to a declaration that Power Home's claims are not subject to arbitration because the arbitration provision of the Agreement fails to encompass disputes related to Power Energy's use of its pre-existing trademark. Accordingly, the claims brought by Power Home in the Arbitration, all of which are based on Power Energy's use of its own trademark, lack a sufficient nexus to the Agreement sufficient to require Power Energy to arbitrate.

61. The Agreement is not a trademark license agreement or any related type of agreement. To the contrary, the Agreement is an agreement between the parties defining the scope of Power Energy's subcontractor obligations related to its provision of solar energy installation services to Power Home's customers. Trademark infringement claims—particularly those involving independent or pre-existing marks—are not arbitrable where they do not arise from or require interpretation of the underlying contract.

62. Power Home's claims in the Arbitration do not depend on any provision of the Agreement, and do not require interpretation of its terms, enforcement of its obligations, or resolution of any contractual dispute.

63. Power Energy is therefore entitled to a declaration that no agreement to arbitrate covers the claims asserted in the Arbitration.

64. Power Energy is additionally entitled to a declaration that Power Energy has no obligation to arbitrate Power Home's claims asserted in the Arbitration.

**COUNT II**
**DECLARATORY JUDGMENT THAT POWER HOME WAIVED ANY RIGHT TO ARBITRATE**

65. Power Energy repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth at length herein.

66. If the Court finds Power Home's claims were arbitrable, Power Home waived any alleged right to arbitration.

67. Power Home waived any alleged right to arbitration by initiating the TTAB Proceeding against Power Energy, based on the same factual allegations raised in the Arbitration, and litigating that TTAB Proceeding to near competition. Power Home engaged in extensive discovery in the TTAB, including discovery of documents and information as well as multiple depositions.

68. Power Home additionally waived any alleged right to arbitration pursuant to the arbitration provision in the parties' Agreement, which states that any arbitration "MUST BE INITIATED OR OTHERWISE COMMENCED BY THE PARTY ASSERTING OR COMPELLING THE ARBITRATION WITHIN A REASONABLE TIME AFTER THE CLAIM IN QUESTION HAS ARISEN…". *See id.* at p. 15 (emphasis in original). Power Home was fully aware of Power Energy's use of the POWER ENERGY SOLUTIONS mark at the time of contracting in August 2023. Therefore, the purported claims arose two years prior to the Arbitration being initiated. Such

an extensive delay is not "reasonable", and Power Home therefore waived any alleged right to arbitration pursuant to the terms of the Agreement.

69. Power Home also failed to comply with the Agreement's default provisions, which further evidences its waiver of any arguable right to arbitrate. The parties engaged in only limited business under the Agreement and ceased their business relationship well before both the filing of the TTAB Proceeding in 2024 and the commencement of the Claim in Arbitration. Had any default actually existed, the Agreement required Power Home to provide timely notice of the alleged default and afford an opportunity to cure while the parties were actively conducting business. Power Home never identified or provided notice of any purported default during the parties' business relationship because no such default existed. Having failed to invoke the Agreement's default procedures at the time, Power Home cannot now, years later and after the parties' relationship has ended, attempt to manufacture a default as a basis for its claims.

70. Power Energy is therefore entitled to a declaration that Power Home waived its right to arbitrate any claims it may have against Power Energy.

## COUNT III
## INJUNCTIVE RELIEF STAYING THE ARBITRATION

71. Power Energy repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though they were fully set forth at length herein.

72. Power Home asserted claims for monetary damages against Power Energy in the Arbitration and, unless enjoined, will continue to pursue such claims to judgment.

73. Where a court determines that a valid arbitration agreement does not exist, or that the matter at issue clearly falls outside the substantive scope of the agreement, it is obliged to enjoin the arbitration.

74. Power Energy is likely to succeed in establishing that Power Home's claims are not subject to arbitration. The claims concern Power Energy's use of its own pre-existing mark, require no interpretation of the Agreement, and fall outside the substantive scope of an arbitration provision that does not address trademark rights.

75. Being compelled to arbitrate a dispute that a party has not agreed to arbitrate constitutes *per se* irreparable harm. *L. Off. of Marvin Lundy v. Whitehaven S.F., LLC*, No. CIV.A. 10-4544, 2010 WL 4178643, at *8 (E.D. Pa. Oct. 22, 2010). Unless Power Home is enjoined, Power Energy will be forced to arbitrate a dispute it never agreed to arbitrate and to expend substantial time and resources doing so, none of which is compensable by any monetary award.

76. Moreover, unless Power Home is enjoined, Power Energy will be forced to expend substantial time and resources litigating the same dispute simultaneously before both the TTAB and FORUM.

77. Power Energy's requested injunction would merely require Power Home to litigate the trademark dispute in the forum it originally chose—the TTAB—where the identical issue is nearing final decision. Power Home, by contrast, can identify no legitimate hardship from being held to the limits of the arbitration provision it drafted.

78. The balance of the equities tips decidedly in favor of Power Energy which, if no injunction issues, would be forced to defend itself in a forum to which it did not consent.

79. The public interest would also be served by prohibiting Power Home from pursuing its claims against Power Energy in a forum to which Power Energy did not consent, as a party may be compelled to arbitrate only those disputes it agreed to submit to arbitration. An injunction also avoids duplicative proceedings and the risk of inconsistent adjudications of the same likelihood of confusion issue already pending before the TTAB.

80. Power Energy has no adequate remedy at law and will suffer irreparable harm unless Power Home is enjoined from prosecuting the arbitration against Power Energy.

81. An order enjoining the arbitration is the only adequate remedy to prevent the irreparable harm Power Energy will suffer from being forced to defend itself in the Arbitration.

## PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff Power Energy prays for relief against Defendant Power Home as follows:

A. A judgment declaring that no agreement to arbitrate covers the claims asserted in the Arbitration;

B. A judgment declaring that Power Energy has no obligation to arbitrate Power Home's claims asserted in the Arbitration;

C. A judgment declaring that Power Home waived any alleged right to arbitrate the claims asserted in the Arbitration;

D. An order temporarily, preliminarily, and permanently enjoining Power Home from pursing claims against Power Energy in the Arbitration;

E. An award of Power Energy's reasonable attorneys' fees and the costs of this action; and

F. Orders granting such other further relief as is just and proper.

Dated: September 29, 2026

Respectfully submitted by:

COZEN O'CONNOR

/s/ *Melanie A. Miller*
Melanie A. Miller – PA Bar ID No. 73499
Camille M. Miller – PA Bar ID No. 79670
Madison H. McNulty – PA Bar ID No. 330924
Anna P. Beck – PA Bar ID No. 332479
1650 Market Street
Philadelphia, PA 19103
Tel. (215) 665-7273
Fax. (215) 701-2273

mmiller@cozen.com
cmiller@cozen.com
abeck@cozen.com
mmcnulty@cozen.com

*Attorneys for Plaintiff Power Energy Solutions LLC*